CITY OF ST. LOUIS, *Appellant*, v. SPECK, *et al.*

1. **Street Openings**: ASSESSMENT OF BENEFITS: THE TAXING POWER. The assessment of benefits accruing from the opening of a street against the owners of property especially benefited by the improvement and adjacent to it, but no part of which is taken for it, is a legitimate exercise of the taxing power, (following *Garret v. St. Louis*, 25 Mo. 505, and other cases).

2. ———: ———: DISTRICT TO BE ASSESSED. The act of 1875 amending the charter of the City of St. Louis (Acts 1875, p. 320), authorized the assessment of benefits to accrue from the opening of a street against any property lying within the limits which the appraisers should determine would be especially benefited by the improvement. It did not limit them to the assessment of benefits against the city at large and the owners of lots, part of which were taken for the street.

3. ———: ———: EVIDENCE. Under section 4, of the foregoing act, a person against whom benefits were assessed, but whose land was not taken, had no right to show that the appraisers fixed an excessive valuation upon land that was taken. He could only show that his property was not benefited to the amount of the assessment.

*Appeal from St. Louis Court of Appeals.*

*Leverett Bell* for appellant.

*H. B. Wilson* for respondent Blank.

NORTON, J.—The controversy in this case grows out of proceedings instituted before the land commissioner of the city of St. Louis, to open Autumn street, from Stoddard avenue to Morton street. There is no dispute, but that all the provisions of law, as well as the ordinances of the city, relating to the subject, had been pursued and complied with. The principal point in contest arises out of the action of the appraisers, who were duly appointed under the law, in charging defendant Blank with sixty-five dollars, that being the amount which, in their estimation, the property of said Blank, no part of which had been taken for said street, would be benefited by the proposed improvement. The plaintiff affirms and defendant denies

that the appraisers had the power under the law to do this. The question was determined in the affirmative by the land commissioner, from which Blank, the defendant, appealed to the circuit court, where, upon a trial had, the judgment of the land commissioner was affirmed, from which defendant appealed to the court of appeals, where the judgment of the circuit court was reversed and from which judgment the plaintiff prosecutes her appeal to this court. It is conceded that no part of defendant Blank's property was to be taken for said street. It is also conceded that defendant's property, for which he was charged with benefits, was within the limits of the district, which the appraisers determined would be especially benefited by said improvement. It is denied that the appraisers had any power under the law to charge any owner of property no part of which was to be taken for said streets with benefits, and it is insisted, with much plausibility, that the appraisers could only assess benefits against those owners, a part of whose property was to be taken for the said street

The point here presented involves a construction of the act of 1875, (Acts 1875, p. 320,) under which the proceedings to open said Autumn street were inaugurated. It is provided in the first section of the act, among other things, that whenever the city council shall, by ordinance, provide for establishing any street, &c., the land commissioner shall issue notice setting forth the general nature of the proposed improvement, with the number of the ordinance and the date of its approval, and the names of the owners of any interests, rights or estates in the several lots or parcels of land proposed to be taken, for which damages may be allowed under this act, and a particular description of the lots and parcels whose owners are unknown; that said notice shall state a day and place when and where said commission will appoint appraisers to assess damages. At such time and place all persons named, and others interested, may appear and object to those who

may be proposed for appraisers. The second section provides fully for the service of said notice personally and by publication. Section 3 provides that the appraisers, after their appointment and qualification, "thereupon shall proceed without unnecessary delay, to examine the premises sought to be taken for such improvement, and also to view and examine the lands affected by such improvement, and shall appraise the damages to the owners for their property to be taken, without reference to the projected improvement, and determine the limits especially benefited by such improvement and ascertain the boundaries of the different parcels of real estate embraced in said limits, and the names of the owners thereof so far as known, and thereupon assess to the city the amount of benefits to it from said improvements, and next, charge to each of the owners of such rights, interests and estates in the said parcels of ground respectively, as damages are allowed for under this act, the amount of benefit thereto from said improvement, stating the name of the owner when known, and when not known, stating the same." It also provides that the appraisers shall file a full report of all their acts and doings with the land commissioner at a time by him designated; that when such report is filed, the said commissioner shall appoint a time and place, when, within ten days thereafter, exceptions to the assessment of damages and benefits or to any prior irregularities or defects in the proceedings may be filed, and the land commissioner shall notify owners of real estate, charged with benefits, who have not appeared in the proceeding, of said time and place, in the same way and manner as provided for parties whose property is taken for the improvement. Subsequently, said exceptions to be heard on evidence, and determined by land commissioners. Sec. 4. If appraisers shall report that benefits to property owners, and city at large, are insufficient to meet damages assessed, the land commissioner shall dismiss the proceedings. Benefits shall be a lien on the property charged. In every case

wherein exceptions are filed, appeal may be taken ; the reversal shall affect only the case embraced in the appeal ; and no party shall be allowed to object, or except to the proceedings on account of any defect or irregularity in the case of any other party.   We have referred to so much of the act of 1875 as we deem material in determining the question whether it was intended by the General Assembly to confer on the appraisers the power to assess benefits to any other lands than those a part of which was to be taken for the improvement, and whether such intention is sufficiently expressed.

We are relieved from a consideration of the constitutionality of the enactment now before us, as ever since the

1. STREET OPENINGS: assessment of benefits: the taxing power.

case of *Garret v. The City of St. Louis*, reported in 25 Mo. 505, was decided, it has been the established law of this State that the General Assembly, in the exercise of the right of eminent domain, might authorize property to be taken for such local improvements as opening a street, &c., and that the assessment of benefits against the owners of property not taken for such improvement, but especially benefited thereby, is a legitimate exercise of the taxing power.   This case was followed in the case of *Uhrig v. St. Louis*, 44 Mo. 558, and *State ex rel. v. St. Louis et al.*, 62 Mo. 244.

It is however argued that the act in question does not delegate to the appraisers the power to charge benefits ex-

2. ——: ——: district to be assessed.

cept as against the owners of property a part of which is taken or to be taken for the improvement.   The following language, to be found in section 3 *supra* of the act, it is claimed, justifies the construction contended for :   " And thereupon assess to the city the amount of benefits to it from said improvements, and next charge to each of the owners of such rights, interests and estates in the said parcels of ground respectively as damages are allowed *for* under this act the amount of benefits *thereto* from said improvement."   It is contended that the above clause limits the power of the appraisers in charg-

ing benefits to the owner of such land only "as damages are allowed for under this act." Now if these latter words are to control in the construction of the entire section, and it as well as the entire act is to be governed by them, a complete verification of the maxim "that he who sticks to the letter sticks in the bark," would become manifest, as it would result, we think, in authorizing the appraisers to charge benefits only to the property actually taken and appropriated for the street, and as no benefits could possibly accrue to the property thus taken and destroyed so far as the owner of it is concerned in being appropriated to a street, the appraisers could not charge benefits at all. What is it that "damages are allowed for under this act?" It is for the land actually taken and appropriated and not for that which is not taken. If only the owners of the land actually taken can be charged, with what are they to be charged ? They are to be charged " with the amount of benefits thereto," that is to the land taken, for the word "thereto" could relate under the construction contended for to no other land but that for which damages are allowed, and damages are allowed under the act only for the land taken. It would therefore follow if thus construed, that as there could be no benefits to the land taken and used for a street, the appraisers would be powerless to charge benefits either to the owners of land, a part of which might be taken for the improvement, or the owners of land, no part of which was to be taken, but which would be especially benefited by said improvement. All that the appraisers could do under the construction claimed would be to charge the city with benefits common to it from such improvement. This would render the whole act nugatory, and entirely defeat the manifest purpose of the Legislature in its enactment.

We must construe the act with reference to the intention of the General Assembly in passing it; and this intention is to be discovered, not from a consideration of isolated phrases, sentences or sections, but from the entire

act. In the exposition of a statute, it is the duty of the court to seek to ascertain and carry out the intention of the Legislature in its enactment, and to give full effect to such intention, and they are bound so to construe it, if practicable, as to give it force and validity, rather than to avoid it, or render it nugatory. (*Clarke v. City of Rochester*, 24 Barb. 471; Dwar. on Stat., 690; 11 Coke, 73; 2 Rol. 126; Cooley Cons. Lim., 184; Sedg. on Stat. and Con. Law, 252; 30 Vt. 746; *Ex parte Ellis*, 11 Cal. 222; *Briggs v. Easterly*, 62 Barb. 51; 4 Gill & Johnson, 152; *Jackson v. Collins*, 3 Cowen, 89–96.) Guided by this principle, and taking the whole act together, especially the third section of it, we think it very clear that the Legislature intended to authorize and did, in fact, authorize the appraisers to charge benefits accruing from an improvement of the character involved in the proceeding for opening Autumn street, against three classes of persons, viz.: First, against the city for benefits resulting to the city at large; second, against the owners of property, a part of which was to be taken for the improvement, for benefits resulting to that part not taken; and third, against the owners of property in limits to be defined by the appraisers, no part of which is to be taken for the street, for especial benefits resulting to such property. It will be observed that section 3 provides that the appraisers, after assessing damages to the owners of the property to be taken for the improvement, "shall determine the limits especially benefited by such improvement, and ascertain the boundaries of the different parcels of real estate in said limits, and the names of the owners thereof so far as known." Now, if the Legislature did not intend that that class of owners of real estate should be charged with benefits, the appraisers would be required by the above provision to do a meaningless and useless thing. We think the requirement had a meaning, and that the purpose of it was to lay the foundation for charging against the owners of property embraced in the

limits designated by the appraisers, the benefits thereto from the improvement.

It will be observed that the appraisers are first required to assess damages, growing out of taking property for the street, to the owners thereof. This ascertains the amount to be paid for the improvement, and this being done, they are then required to define the limits within which property would be benefited by opening the street, giving the boundaries and the names of the owners thereof. This ascertains a class of persons who are, to the extent that their property is benefited, to contribute to the payment of the damages as previously ascertained. When these are ascertained, they are then required to assess, first to the city the benefits to it, and then "to charge each of the owners of such rights, interests and estates in said parcels of ground as damages are allowed for under this act." What parcels of ground are here meant? Evidently, we think, to such parcels of ground from which the land appropriated to the street was taken, as well as the parcels of ground embraced in the district which, in the judgment of the appraisers, would be benefited by the improvement. The above words were intended to give authority to the appraisess to charge the owners of such parcels of ground as above mentioned, and the following words, "the amount of benefit thereto from said improvement" direct what they shall be charged with. This construction, we think, is fully sustained by the remainder of the section, which requires the appraisers to make and file "a full report of all their acts and doings in the premises" with the land commissioner, who, upon the filing thereof, is required "to appoint a time and place when, within ten days thereafter, exceptions to the assessment of damages and benefits, or to any prior irregularities in the proceedings, may be filed by the parties respectively interested; and as to the owners of rights, interests and estates in the real estate, charged with benefits, who have not appeared

in the proceedings, the land commissioner shall notify them of said time and place, in the same way and manner as is prescribed for notifying parties whose property is taken for the improvement.   Whatever doubt the words "as damages are allowed for under this act," might have created as to what property owners it was intended by the Legislature should be charged with benefits, are entirely removed by the provision of the section we have quoted above.   If it had not been intended that persons owning property, in the limits to be benefited, should be charged with benefits, why were the appraisers required to define such limits and report the fact to the land commissioner, and why was the commissioner required to notify such persons in the same way as is provided for notifying parties, whose property is taken, of the time and place exceptions to the assessment of benefits would be heard?   It is apparent, we think, that the Legislature not only recognized the right of the appraisers to charge against the owners of property, within the limits benefited, no part of which was to be taken for the improvement, the benefits to it therefrom, but it also recognizes the right of such owner to make exceptions to the charge of benefits against him, and the right of the land commissioner to hear and determine the exceptions when made.

The refusal of the trial court to allow a witness to testify on behalf of defendant in regard to the value the property taken for the improvement is also assigned for error.   Under the provision of Sec. 4 of the act *supra* we think the objections to the introduction of this evidence was properly sustained.  Defendant Blank was the only party appealing and the question on his appeal, whether his property would be benefited by the improvement to the amount charged against him by the appraisers, and as the evidence offered did not relate to this question, it was properly rejected.

3. ___: ___: evidence.

For the reasons given herein, the judgment of the

court of appeals will be reversed, and that of the circuit court will be affirmed, in which all the judges concur.

AFFIRMED.