THE CITY OF ST. LOUIS v. RICHESON et al., Appellants.

**Charter of St. Louis**: STREET OPENINGS: ASSESSMENT OF BENEFITS: DUE PROCESS OF LAW: SUIT ON SPECIAL TAX-BILLS. The article of the charter of the city of St. Louis in relation to the opening of streets, provides for the giving of notice of the proceeding to all persons whose lands are to be taken for a street, and authorizes the commissioners appointed to assess damages and benefits, to make assessments of benefits against the owners of all property which in their opinion will be specially benefited by the opening, not limiting them to those who have been made parties to and notified of the proceeding. It further provides that the sums so assessed shall be a lien on the property benefited and shall be collected as provided by ordinance. The foregoing proceedings, under the charter, are had and conducted in the St. Louis circuit court. An ordinance provides for the issuing of special tax-bills for these sums and makes it the duty of the city collector by advertisement in a newspaper for ten consecutive days to notify all parties interested by name that he has these bills in his hands for collection, and that they may be paid at any time during sixty days without interest or costs, and that all bills remaining unpaid at the expiration of that period, will be enforced by legal proceedings; and further provides that after the expiration of the sixty days the city counselor shall proceed to collect all bills remaining unpaid by suit in the circuit court. No provision of either charter or ordinance undertakes to make the special tax-bills a lien upon the land; nor is there any declaration that said assessment or tax-bill shall be, even *prima facie,* much less conclusive evidence, of the truth of the facts upon which they are based. *Held,* that in this method of procedure there is nothing which a person who had no notice of the original proceeding, but has been assessed benefits, can object to as violating the constitutional prohibition against taking property without due process of law. He has his day in court when summoned to answer the suit on the tax-bill, and in this suit may make any defense he may have, or which he could have presented to the original proceeding had he been made a party and been notified thereof.

But per NORTON, J. The right of defense is limited to showing that the law authorizing the assessment has not been complied with in some essential particular. The amount cannot be disputed.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Marshall & Barclay* for appellants.

The charter in so far as it permits " benefits " to be

assessed by special tax-bills, in street opening proceedings, against the property of persons who have no notice of the proceedings, and no opportunity to be heard therein, is clearly unconstitutional and void.   Charter, art. 6; 2 R. S. 1879, pp. 1606, 1607, § 2 *et seq*; *Stuart v. Palmer*, 74 N. Y. 183; Mo. Const., art. 2. §§ 30, 21; *State v. City*, 67 Mo. 113; *State v. Jersey City*, 4 Zabr. (24 N. J. L.) 662; *Ray Co. v. Barr*, 57 Mo. 290.   Even the power of general taxation (and a *fortiori* of special taxation) cannot be lawfully exercised without an opportunity to those whose property is affected thereby to appear and be heard on the subject, before the tax becomes a lien on their property.   Cooley on Taxation, p. 266; *Abbott v. Lindenbower*, 42 Mo. 162; *Darling v. Gunn*, 50 Ill. 424; *Butler v. Supervisors*, 26 Mich. 22.   The charter (in the particular we are considering in this case) is in conflict with the United States Constitution as well as that of Missouri.   To fix a conclusive (Cooley on Tax., pp. 450, 460; *Potosi v. Casey*, 27 Mo. 372), lien upon real estate (which can only be released by payment), without notice to the owner or opportunity given him to be heard in regard to the justice or amount of the lien, amounts to the taking of property without due process of law.   U. S. Const., Amendments 5 and 14; *Stuart v. Palmer*, 74 N. Y. 183; *s. c.*, 30 Am. Rep. 289; *Davidson v. New Orleans*, 96 U. S. 97; *Clark v. Mitchell*, 64 Mo. 564.

The charter (art. 6, § 2) requires as parties in these cases two classes of defendants, viz.:   1st, The owners of the land taken for the street, and 2nd, The owners of all " parcels of land embraced in the proposed improvement;" that is to say, the owners of the land within the area improved or benefited by the opening, or (as expressed in the last sentence of the same section) " affected " by the improvement.   Of course the city counselor, in the first instance, should—under this construction—include all persons likely to be thus assessed for the improvement, and the commissioners (§ 5) will afterward assess as many or as

few of those thus brought in, as they may consider actually benefited.

· To give section 2 a construction restricting the defendants to those only whose land is taken, and omitting those whose land is " affected" or benefited, would result (when read in connection with section 5) in sanctioning the assessment of benefits for the improvement against persons not parties to the proceeding nor notified thereof. It will never be presumed that such a result was intended unless the law be remarkably clear. *State v. Commissioners*, 41 N. J. L. 83. The owners of lands to be assessed for local improvements are entitled to notice of the meeting of the commissioners. *State v. Commissioners*, 41 N. J. L. 83; *State v. Jersey City*, 24 N. J. L. 662; *Nashville v. Weiser*, 54 Ill. 245. There is no escaping the conclusion that the charter provision is unconstitutional as authorizing the taking of property without due process of law, unless it can be held that the assessment of the commissioners is not final. But this position cannot be maintained, because (1) The charter assumes to make the commissioners the sole ·judges of the benefits, by providing that the assessment shall be the amount of benefit " in the opinion of the commissioners," and further that " the sums to be paid by the owners of property specially benefited by the improvement, as ascertained by the commissioners, shall be a lien on the property so charged, and shall be collected as provided by ordinance." Art. 6, § 5. Clearly showing that the amount of the lien is finally determined by the commissioners, and only the form and manner of its collection is to be regulated by ordinance. *State v. Commissioners*, 41 N. J. L. 83. (2) The general rules for the government of statutory powers prescribe that such duties as are performed by these commissioners are, by their nature, not the subject of review, as to the amount of assessment. *Strusburgh v. N. Y.*, 45 N. Y. Sup. Ct. 508; Hilliard on Tax., pp. 368, 378, 379; *In re Central Park*, 61 Barb. 40; *Piper's Appeal*, 32 Cal. 530; *Martin v. Mott*, 12 Wheat. 31. (3) The assessment

of benefits is only sustained in any case, by the courts as a branch of the taxing power which belongs to the legislative department of the government. *Uhrig v. City*, 44 Mo. 458; *State v. City*, 62 Mo. 244; Dillon Munic. Corp., (2 Ed.) § 588. Hence the courts do not possess the power of reviewing the exercise of such taxing power by the commissioners (assuming the proceedings have been regular) any more than they would have the power to review the justice (in respect to amount) of a general tax assessment on which a tax-deed to land, sued for in the courts, might be founded. The taxing power cannot be exercised, directly or indirectly, by the judiciary. Const. 1875, art. 3, § 1; *Taylor v. Secor*, 95 U. S. 575; *Hardenburgh v. Kidd*, 10 Cal. 402; *Heine v. Commissioners*, 19 Wall. 655; Cooley on Taxation, 34. This being clearly so, the suit on the tax-bill can only be regarded as a method for collecting (not assessing or determining) the tax, and so the city charter treats it. Charter, art. 6, § 5.

*Leverett Bell* for respondent.

Under the system governing street openings, as established by the charter of St. Louis, parties owning property assessed with benefits are not made defendants in the proceeding nor served with process, unless some part of the property is taken for the improvement. Where the only action touching a specific piece of property is the assessment of benefits, it is regarded as an exercise of the right of taxation, and no notice is required to be given to the owner of the pendency of the proceeding. But if the property, or any part of it, is to be taken for the improvement, the power exercised is that of eminent domain, and the law requires the owner to be made a party defendant, and served with process, and afforded an opportunity to defend. *McMillen v. Anderson*, 95 U. S. 41; *Davidson v. New Orleans*, 96 U. S. 104; *Weimer v. Bunbury*, 30 Mich. 201; *In re De Peyster*, 80 N. Y. 565; *People v. The Mayor*,

4 N. Y. 419; *Howell v. Buffalo*, 37 N. Y. 267; *People v. Lawrence*, 41 N. Y. 137; *In re Van Antwerp*, 56 N. Y. 261; *In re Lands in Flatbush*, 60 N. Y. 398; *In re Zborowski*, 68 N. Y. 96. The doctrine of these cases is, that the constitutional limitation as to " due process of law," has no application to the exercise of the power of taxation. *High v. Shoemaker*, 22 Cal. 363; *Matter of the Trustees*, 31 N. Y. 579; *Newby v. Platte Co.*, 25 Mo. 258; *People v. Hagar*, 49 Cal. 232. That special assessments "are an exercise of the taxing power," says Judge Cooley in his work on Taxation, page 430, " has over and over again been affirmed, until the controversy must be regarded as closed." Assessments made for benefits conferred by local improvements are a valid exercise of the taxing power. *Garrett v. St. Louis*, 25 Mo. 505; *Palmyra v. Morton*, 25 Mo. 593; *Egyptian Levee Co. v. Hardin*, 27 Mo. 495; *St. Joseph v. Anthony*, 30 Mo. 537; *St. Joseph v. O'Donoghue*, 31 Mo. 345; *State, etc., v. St. Louis*, 62 Mo. 244; *St. Louis v. Speck*, 67 Mo. 403; *Uhrig v. St. Louis*, 44 Mo. 458. Under the law construed in *Stuart v. Palmer*, 74 N. Y. 183, the property owner, unless notified, had no opportunity to defend, whereas under the charter of St. Louis the special tax-bill can only be enforced by an action in a court of competent jurisdiction in which the property owner is a necessary party defendant, and his property cannot be disturbed save by the judgment of the court. And in an action of this character the property owner may show that the ordinance authorizing the improvement was unnecessary and oppressive, and thus defeat a recovery on the special tax-bill. *Corrigan v. Gage*, 68 Mo. 541. Until the commissioners' report is made, it is not known what property is benefited by the improvement, nor the owners thereof. It is impossible to make such parties original defendants in the proceeding; and it is unnecessary to join them as defendants at any subsequent stage, because they have full opportunity to be heard in the suits instituted on the special tax-bills, and to defend against the same.

RAY, J.—This is a suit to enforce the payment of a special tax assessed against a lot of the defendants, in the city of St. Louis, which, as alleged, is especially benefited by certain improvements, authorized by the city under its charter, and which assessment, by its charter, is made a lien upon the property so charged. The assessment was made in the course of certain proceedings in the St. Louis circuit court, authorized by its charter for that purpose, and entitled : " The City of St. Louis, plaintiff, against D. Signiago et al., defendants." The provisions of the charter authorizing such proceedings are found in sections 2, 3, 4, 5, 6 and 7 of article 6 of the city charter and are to the following effect : Section 2 provides that the city counselor, in the name of the city of St. Louis, shall apply to the circuit court of the eighth judicial circuit, by petition, setting forth the general nature of the improvement to be made, the names of the owners of the several lots or parcels of land sought to be taken, and praying the appointment of three disinterested commissioners to assess the damages which said owners may severally sustain by reason of the appropriation and condemnation of such real estate by the city for such purpose, to which petition the owners of all such lots or parcels of land embraced in the proposed improvement shall be made parties defendant by name.

Section 3 requires that upon the filing of such petition a summons shall be issued giving such defendants at least ten days' notice of the time when such petition will be heard.

Section 4 provides that the court, on being satisfied that due notice of the pending of the petition has been given, shall appoint three disinterested commissioners to assess the damages which the owners of the land may severally sustain by reason of such appropriation.

Section 5 makes it the duty of the commissioners to ascertain the actual value of the land and pieces proposed · to be taken, without reference to the projected improve-

ment, and the actual damages done to the property thereby, and, for the payment of such values and damages, to assess against the city the amount of benefit to the public generally, and the balance against the owners of all property which shall be especially benefited by the proposed improvement in the opinion of the commissioners, to the amount that each lot of said owner shall be benefited by the improvement. The sums to be paid by the owners of property especially benefited by the improvement, as ascertained by the commissioners, shall be a lien on the property so charged, and shall be collected as provided by ordinance, and when collected shall be paid into the city treasury as a separate fund, to be used exclusively for the payment of the damages awarded.

Section 6 provides that when the commissioners shall have viewed the property and assessed the value and damages and benefits, they shall make their return of such assessments in writing, and under oath, to the circuit court, which shall be filed with the clerk thereof. In making such report the value and damages allowed to each owner and the benefit assessed against each individual shall be separately stated.

Section 7 provides that the report of said commissioners may be reviewed by the circuit court on written exceptions filed by either party, and the court shall make such order therein as right and justice may require, and may order a new appraisement upon good cause shown; but the hearing of such exceptions shall be summary, and the court shall fix a day therefor upon the filing of such exceptions, etc.

The ordinance providing for the manner of collecting the benefits thus assessed is to the effect that the city comptroller shall issue " special tax-bills," in accordance with the commissioners' report, against all parties and parcels of property charged with benefits, and deliver the same to the city collector, who shall for ten days consecutively, by advertisement in a newspaper, notify all parties interested

by name that said bills are in his hands for collection, and will so remain for sixty days, during which time payment can be made at his office without interest or additional costs, and that all bills remaining unpaid at the expiration of that period will be enforced by legal proceedings; and that upon the expiration of the sixty days all bills unpaid shall be turned over to the city counselor, who shall proceed to collect the same by suit, instituted in the name of the city of St. Louis, for that purpose. And this is the suit so instituted upon the particular tax-bill in question.

Of the petition in the case it is perhaps sufficient to say that it is in due form, and sets out the facts necessary and proper under the requirements of the city charter and. ordinances thereunder, in order to show the assessment,. declare the lien, issue the special tax-bill, and authorize the institution of a suit in the name of the city for its collection. The prayer of the petition is, that a decree be entered establishing the amount of said special tax-bill, interest and costs, as a special and first lien against the property described and ordering its sale to satisfy the amount found to be due as aforesaid.

To the petition the defendants filed the following answer, to-wit: "Defendants, for answer to the petition herein,. say that none of them was at any time a party to the said proceeding, entitled 'The City of St. Louis, plaintiff, against D. Signiago et al., defendants;' numbered 46,443; that none of these defendants had any notice of said proceedings at any time during its pendency, and defendants plead and rely expressly upon the fifth amendment to the constitution of the United States as a bar to the claim made in the petition herein. And having answered, these defendants pray to be hence discharged without day, with their costs."

The plaintiff demurred to the answer on the ground that it does not state facts sufficient to constitute a defense to the action. The court sustained the demurrer, and the defendants excepted, and declining to answer further a final judgment was rendered for the plaintiff. The de-

fendants, after an ineffectual motion in arrest, duly excepted and carried the case to the St. Louis court of appeals, where the judgment of the circuit court was affirmed *pro forma*, from which an appeal was taken to this court.

The answer, it will be noticed, puts the defense upon the sole ground that the defendants were not parties to, and had no notice of, the proceedings specified therein at any time during their pendency, and pleads and relies expressly on the fifth amendment to the constitution of the United States as a bar to said claim.   The fifth amendment referred to declares, among other things, that " no person shall be deprived of life, liberty or property without due process of law ; nor shall private property be taken for public use without just compensation." It is conceded, we believe, to be conclusively settled by the adjudications that the fifth amendment, expressly referred to and relied on, is a limitation of the powers of the federal government and not a restraint on the states. *Barron v. Baltimore*, 7 Peters 243; *Withers v. Buckley*, 20 How. 84; *Twitchel v. Commonwealth*, 7 Wall. 321.   But section 1 of the fourteenth amendment to the constitution of the United States, in express terms, places the same restriction on the powers of the states, and the 30th section of the 2nd article of our own constitution is to the same effect.   Conceding, therefore, that under this answer the defendants may avail themselves of any and all constitutional objections, wherever found, to the validity of the city charter, or any of its provisions, in this particular, we proceed in the first place to consider the question thus presented, so far as the same, in our opinion, properly arises on this record, or is material to the case.

In proceedings of this sort it is conceded to be the settled law of the State that the general assembly, in the exercise of the right of eminent domain, may authorize private property to be taken for such local public improvements as the opening of streets, etc., and that the assessment of benefits against the owner of property not taken

for such improvement, but especially benefited thereby, is a legitimate exercise of the taxing power. *City of St. Louis v. Speck*, 67 Mo. 406; *Garrett v. City of St. Louis*, 25 Mo. 505; *Uhrig v. St. Louis*, 44 Mo. 458, and *State v. St. Louis*, 62 Mo. 244. This proposition is not denied by the defendants' counsel, but he insists that this legitimate power of taxation, in this particular instance, has been exercised in an unconstitutional manner, for the want of notice to the defendants of the particular proceedings under which this assessment was imposed. He insists that the enforced collection of such a tax, thus imposed, without any notice to the defendants, or opportunity given them to be heard during the pendency of said proceedings in the circuit court, would amount to a deprivation of property " without due process of law," within the meaning of these constitutional provisions, and, therefore, that the assessment so imposed is null and void. On the other hand, it is claimed for the plaintiff, in the first place, that it is competent for the legislature, if it chooses to do so, to provide by law for the summary assessment and collection of taxes without notice or opportunity of being heard, and that such exercise of the taxing power is "due process of law," within the meaning of the constitution, and consequently that the assessment is valid; and, secondly,-if notice should be held indispensable to a valid exercise of the taxing power, it is claimed for plaintiff that the opportunity for a hearing, when sued under the ordinance for the collection of the tax-bill, as in this case, is sufficient notice; that notice and opportunity to be heard, after the assessment and before the collection, or during the progress of the suit to collect, is as efficacious as if given before, and obviates the objection.

The text writers and adjudged cases, it must be confessed, are not in entire harmony upon all these questions, or perhaps any of them. Cooley, in his work on Taxation, lays down the doctrine very broadly that notice of proceedings in such cases and an opportunity for a hearing

of some description are matters of constitutional right. At page 265 he uses this language : " The summary nature of tax proceedings has been remarked upon. Every inhabitant of the state is liable to have a demand established against him, on the judgment of others, regarding the sums which he should justly and equitably contribute to the public revenues. Every property owner in the state, whether an inhabitant or not, is liable to have a lien in like manner established against his property. Moreover, the persons who make the assessments lighten the burden upon themselves in proportion as they increase it upon others. In such proceedings, therefore, it must be a matter of the utmost importance that he should have some opportunity to be heard before the charge is fully established against him, and it would seem to be a dictate of strict justice that the law should make reasonable provision to secure him, as far as may be, against partiality, malice or oppression. The obligation to make provision for this purpose is recognized by the statutes of the several states. By some the person assessed is allowed to reduce what he claims to be an excessive assessment by his own oath ; by others he is allowed an appeal to some board of review, and in all, perhaps, some method is provided by which he may have a hearing before the assessment becomes fixed and final against him." At page 266 the same author uses this further language: " We should say that notice of proceedings in such cases, and an opportunity for hearing of some description, were matters of constitutional right. It has been customary to provide for them as a part of what is 'due process of law,' for these cases, and it is not to be assumed that constitutional provisions, carefully framed for the protection of property, were intended, or could be construed to sanction legislation, under which officers might secretly assess one for any amount in their discretion without giving him an opportunity to contest the justice of the assessment.    *    *    It is not customary to provide that the tax-payer shall be heard be-

fore the assessment is made, but a hearing is given afterwards, either before the assessors themselves, or before some court or board of review." At page 572 this further language is used : " Reference has already been made by us to the principle which in this country has been adopted from the Great Charter, that no person shall be deprived of his property except by the law of the land, or, as it is sometimes expressed, by due process of law ; and it has been stated that this principle is as much applicable in the case of taxation as in any other. It has also been said that however summary and apparently arbitrary are the methods and processes in taxation, they cannot deprive the citizen, when his property is taken in the course of their enforcement, of a trial of the right to take it before some impartial judicial tribunal to which the public authorities must justify their proceeding."

In the late case of *Stuart v. Palmer*, 74 N. Y. 183 ; *s. c.*, 30 Am. Rep. 289, the court holds that " a law imposing an assessment for a local improvement, without notice to, and a hearing, or an opportunity to be heard, on the part of the owner of the property to be assessed, has the effect to deprive him of his property without due process of law" and is unconstitutional. " The legislature may prescribe the kind of notice and the mode in which it may be given, but it cannot dispense with all notice." " It is not enough that the owner may by chance have notice or that he may, as a matter of favor, have a hearing ; the law must require notice and give a right to a hearing." There are quite a number of other authorities tending to the same effect.

On the other hand there are equally high authorities to the effect that in construing the phrase " due process of law," as used in the constitution, reference must be had to the subject matter, to the department of the government in or by which the proceedings are had, together with the nature of its organization and its modes of procedure ; that the taxing power is an incident to sovereignty, and its prompt and vigorous exercise vital to the very existence of

government itself, and that in all ages and countries it has been accustomed to be exercised in a summary manner *ex parte* and without notice to the parties affected; that this results from its very nature and from the necessities of government; and that the phrase " due process of law" within the meaning of the constitution is one thing when applied to judicial proceedings in courts of common law jurisdiction, and quite another when applied to the taxing power with its summary proceedings promptly and vigorously executed; that the power belongs to the legislative department of the government, and whatever mode of procedure it chooses in its discretion to prescribe for its exercise within the limits of legislative authority is as much " due process of law" as the more formal and orderly regulations adopted for the government of judicial proceedings in courts of justice; that this difference in the modes of procedure and action of the different departments of government is of immemorial usage, and was well understood when the constitution was framed, and was not intended to be altered or changed by the use of the phrase in question, and that what was "due process of law " before the formation of the constitution remains "due process of law " after its adoption, when applied to the different departments of government in matters of taxation or other kindred subjects.

This whole matter, as well as the origin and history of the phrase in question, was very fully considered and elaborately discussed in the case of *Murray's Lessee et al. v. Hoboken Land & Improvement Co.*, 18 How. (U. S.) 272, where it was held that " a distress warrant issued by the solicitor of the treasury under the act of congress passed on the 15th day of May, 1820, is not inconsistent with the constitution of the United States; that it was an exercise of executive and not judicial power, according to the meaning of those words in the constitution; and that neither is it inconsistent with that part of the constitution which prohibits a citizen from being deprived of his lib-

erty or property ' without due process of law.'" In the subsequent case of *McMillen v. Anderson*, 95 U. S. 37, it is held that " the revenue laws of a state may be in harmony with the fourteenth amendment to the constitution of the United States, which declares that no state shall deprive any person of life, liberty or property without 'due process of law,' although they do not provide that a person shall have an opportunity to be present when a tax is assessed against him, or that the tax shall be collected by suit; that a statute which gives a person against whom taxes are assessed a right to enjoin their collection and have their validity judicially determined is 'due process of law,' notwithstanding he is required, as in other injunction cases, to give security in advance."

In the still more recent case of *Davidson v. New Orleans*, 96 U. S. 97, the same court, speaking through Justice Miller, after considering at length the origin and history of this provision of the constitution, as found in Magna Charta and in the fifth and fourteenth amendments to the constitution of the United States, suggests the difficulty and danger of attempting an authoritative definition of what it is for a state to deprive a person of life, liberty or property " without due process of law " within the meaning of the fourteenth amendment; and holds that the enunciation of the principles which govern each case as it arises is the better mode of arriving at a sound definition.

In this view we concur, and shall make no such attempt; but will be content, if we are able, to determine and announce correctly the principles governing this case. Indeed, we are of opinion that the case can be properly disposed of upon its merits without deciding that question. We may go even further and say that the question does not properly arise on this record when carefully considered. We may concede, without deciding, that it is competent for the legislature in the legitimate exercise of the taxing power, through its own proper administrative officers, to provide for the assessment and collection of its

The City of St. Louis v. Richeson.

revenues in a summary manner, *ex parte* and without notice; and we may also concede that it may, if it chooses, provide for their assessment and collection through the instrumentality of judicial proceedings; but in doing so it by no means follows that the legislature can empower the judiciary to proceed in a manner utterly inconsistent with its very nature and organization; or give to their judgments and decrees thus rendered a force or effect which the courts themselves, from their constitution and organization, have no power to impart.

The judiciary, as we all know, is accustomed to proceed, in all its final and authoritative adjudications, upon due notice, either actual or constructive, and after some opportunity to be heard has been given; and without such notice and opportunity its most solemn decrees and judgments are everywhere held to be without any binding or conclusive effect, and for most purposes absolutely void. For such a position, we imagine, no citation of authorities is necessary. This law of their power and jurisdiction is fundamental, and from it they never depart. Even when proceeding in prize cases, admiralty suits for forfeitures, and other suits *in rem*, where no particular individuals are summoned to answer, they do not depart from this inexorable law of their being. In all such cases "monition," a process in the nature of a summons, is always deemed indispensable and is commonly said to be a citation of the whole world. 2 Bouv. Law Dic., 185. This law of judicial power and authority is well understood and recognized by the legislative department in all its enactments, and it is not to be presumed that it ever assumes or attempts to encroach upon this lawful domain of the judicial department, or to give to the decrees or judgments of its courts a power or effect they themselves could not impart to them. When the legislature thus calls to its aid the judiciary, it is understood to do so subject to the conditions and limitations under which alone the judiciary, by reason of its nature and constitution, has power to act.

In this case the city charter nowhere declares, except as hereinbefore stated, what shall be the effect of the assessment of benefits authorized to be made in the proceedings in the circuit court to which the owners of the property charged are neither parties nor have any notice; nor does it anywhere undertake to say what shall be the effect of the special tax-bills authorized for their collection. There is here (as is frequently the case in proceedings where parties have had some sort of notice and opportunity to be heard), no declaration that said assessment or tax-bill shall be even *prima facie*, much less conclusive, evidence of the truth of the facts upon which they are based.

This case is unlike that class of cases where the parties taxed have had some sort of notice and some opportunity to be heard before the final determination thereof; and in which it is commonly, and we think rightfully, held that if the parties fail to avail themselves of the special statutory remedy provided for reviewing such assessments of taxes or benefits, they are concluded thereby from afterward contesting many matters which they might have controverted before said board of review. But even then, the conclusive effect of such assessments and tax-bills is only qualified; they may still defend on the ground that the tax is illegal; that there was no jurisdiction; or, in exceptional cases, that the ordinance, under which the same was done, was unreasonable and oppressive, or the like. Cooley on Taxation, 528, 529; *Corrigan v. Gage*, 68 Mo. 541. The reason of this difference is they have had their day in court. Not so here. It is not pretended that any notice whatever, or any opportunity to be heard has been given or offered these parties at any period prior to the institution of this suit, except the constructive notification given by the collector that the special tax-bills were in his hands for collection, and if not paid within sixty days would be enforced by legal proceeding. Under the charter and ordinance, this suit (instituted in the name of the city and by its authority) is confessedly the first and only opportu-

nity the parties against whom benefits are assessed have had to be heard, if indeed, they are entitled to be heard at all. It may be asked what is the necessity or object of this suit if the parties sued, when they come into court, shall not be heard in their defense? If such is the law why was it not provided in the charter that the special tax-bills should have the force and effect of special executions, and authorize the collector to proceed at once to their collection without the delay, expense and trouble of a meaningless suit? Such a construction, in our opinion, is not warranted by the terms of the charter itself, or that of the ordinance thereunder, when taken and considered together, as we think they may and should be. It is needless to argue that such an interpretation is at variance with the nature and object of all judicial inquiries and suits; and when properly considered, without the semblance of authority to support it. We do not mean to say that this assessment of benefits is of itself inoperative and without any effect whatever; but what we mean to hold is that whilst it is valid, as a preliminary inquiry, and while the tax-bill issued thereon is good as the basis for the suit directed to be instituted thereon, yet it does not have, and was not intended to have any binding or conclusive effect against the party when thus sued. Such, manifestly, is the interpretation put upon the charter by the city itself, in the institution of this suit. If the charge was incontestibly imposed, or its amount conclusively ascertained by the original proceeding, why ask the court by its order to establish the one or find the other? Yet such is the prayer of the petition. Whether it would have been better for the charter to have required that this inquiry should have taken place in the original proceedings in the circuit court, after due notice thereof, or as now provided, in this suit to enforce and collect the tax-bill, was matter for the legislature, and is no concern of ours.

We conclude, therefore, that it was competent for the defendants in this suit to have set up and maintained by

way of answer any good and valid defense they might have or which they could have presented to the original proceedings in the circuit court for the condemnation of said property, and the assessment of said benefits if they had been made parties thereto and had notice thereof. But the answer actually made by these defendants was that they were not parties to, and had no notice of, said original proceeding in the circuit court during its pendency, and were not bound thereby. It may be conceded that this answer is true, and yet if our construction of the charter and ordinance is correct, this answer, in the language of the demurrer, does not state facts sufficient to constitute a defense to this action. It may be true that they were not parties to said original proceeding during its pendency and had had no notice thereof; yet that fact is wholly immaterial if they are parties hereto duly notified, and can be heard in their defense herein. In this particular we think the defendants in their answer misconstrued the charter, ordinance and proceedings thereunder, and mistook their rights and remedy in the premises. The demurrer to the answer as filed, therefore, was rightfully sustained.

It will be remembered that we are here treating of the nature and effect of judicial proceedings in courts of common law jurisdiction, and not of proceedings of officers and tribunals of a purely administrative character. What conclusiveness, qualified or absolute, may have been or should rightfully be accorded to them by the authorities, need not, as before remarked, be here determined. We may add, also, that a number of other questions have been raised by the briefs of counsel, but we have not found in them anything to change the result at which we have arrived. There is, therefore, no error in the judgment of the St. Louis court of appeals affirming that of the circuit court, and its judgment is, therefore, affirmed. All the judges concur—Judge NORTON concurring in the result.

NORTON, J.—I concur in affirming the judgment in

this case on the ground that parties against whom benefits are assessed are required to be sued and notified of said suit before the benefits assessed can be adjudged a lien against the land benefited by the opening of a street and before said land can be sold; but my opinion is that the right of a party thus sued to defend against the assessment is limited to showing that the law authorizing such assessment has not been complied with in some essential particular, and if the proceedings have been regular and in compliance with the law, the party sued will not be allowed to dispute the amount of tax or assessment imposed.